# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Nov 22, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

PING with AT&T (and all its subsidiaries and affiliates) for (414) 379-5631 (See Attachments)

)
)
)
)
)
)

Case No.   23   MJ   223

**Matter No.: 2023R00375**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A); 922 (d); 922(g)(1); and 933 | Engaging in the Business of Importing/Manufacturing/ Dealing in Firearms; Sale or Transfer of a Firearm to a Prohibited Person; Unlawful Possession or Receipt of a Firearm by a Prohibited Person; Trafficking in Firearms |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Matthew Ernst*

_____
*Applicant's signature*

SA Matthew A. Ernst, ATF

_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means)*.

Date:   11/22/2023

_____
*Judge's signature*

City and state:   Milwaukee, WI

Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT
## Matter No.: 2023R00375

I, Matthew Ernst, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under
Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about
the location of the cellular telephone assigned call number **(414) 379-5631,** ("TARGET CELL
PHONE"), whose service provider is **AT&T and all of its Subsidiaries and Affiliates** ("Service
Provider"), a wireless telephone service provider headquartered at 11760 US Highway 1, North
Palm Beach, FL 33408. The TARGET CELL PHONE is described herein and in Attachment A,
and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant application seeks the prospective collection of information,
including cell-site location information, that may fall within the statutory definitions of
information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3)
& (4), I also make this affidavit in support of an application by the United States of America for
an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen
registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,
routing, addressing, and signaling information associated with each communication to or from
the TARGET CELL PHONE.

3.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and
Explosives (hereinafter "ATF"). As such, I am "an investigator or officer charged by the
Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture
provisions of the laws of the United States," within the meaning of Section 3051(a) of Title

18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, execute warrants and to make arrests for offenses against the United States and offenses enumerated in United States Code Title 18 and Title 21. I have been employed with the ATF since January 2015, and am currently assigned to the Milwaukee Field Office, under the Chicago Field Division. I completed Criminal Investigative Training and Special Agent Basic Training at the Federal Law Enforcement Training Center. I have received training on in connection with, and conducted investigations of violations of the National Firearms Act, Gun Control Act, and Title 18, United States Code, Sections 922(g), 924(c) and others. I have also received training and conducted investigations involving illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841, 843, 846 and others.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 922(a)(1)(A) (Engaging in the Business of Importing/Manufacturing/ Dealing in Firearms); 922(d) (Sale or Transfer of a Firearm to a Prohibited Person); 922(g)(1) (Unlawful Possession or Receipt of a Firearm by a Prohibited Person); and 933 (Trafficking in Firearms) have been committed by Dwaine WASHINGTON ("WASHINGTON"), Kelvin HENRY ("HENRY"), and others known and unknown, as explained below. There is also probable cause to search the information

2

described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

**JURISDICTION**

6.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined 18 U.S.C. Section 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. Section 2711(3)(A)(i).

**PROBABLE CAUSE**

**Search Warrant at Dwaine Washington's Residence**

7.      On October 4, 2023, law enforcement agents executed a search warrant at the Milwaukee home of Dwaine WASHINGTON ("WASHINGTON") and located evidence that WASHINGTON was manufacturing privately made firearms ("PMF").

8.      In WASHINGTON's home, law enforcement recovered and/or located:

   a. approximately nine (9) firearms (five (5) of which were PMF AR15-style pistols);

      1. Four (4) of the AR15 pistol PMFs were all similar in make and style and were located on top of a dog kennel and in the living room.

   b. seven (7) PMF jigs/molds (five (5) of which were pistol jigs/molds and two (2) were AR15 jigs/molds);

   c. drill bits, grinders, drill presses, Dremel(s) and Dremel attachments, vices, and a router

   d. various firearm parts and accessories; and

3

e. plastic shavings from PMF jigs and/or frames/receivers also known as "swarf," and other tools in the basement.

9. Based on training and experience, your affiant knows that a polymer 80 jig provides the builder with the tools, measurements, and physical guides for fabricating an 80% lower or frame into a working firearm. An 80% lower is an object that is nearly a lower receiver and does not yet require serialization per US Federal Law and ATF rules. Jigs are kits that can consist of metal or plastic plates, bolts, drill bits, and end mill bits. Jigs are made specific to the firearm being built, whether it's an AR rifle/pistol, or a handgun, and therefore, parts and appearances may vary. Pistol jigs all use at least two side plates to secure the frame, like an AR jig does. Unlike the AR's 80% lowers, there is no solid metal cavity that needs to be milled on an 80% frame. Instead, smaller amounts of material are carved out to make room for the slide and barrel. These fabrication requirements dictate how each pistol jig is made. On polymer frames, cutting the excess material requires just a few minutes with a pair of snips. A polymer handgun jig has a simple outline built into the side plates to show the builder where to cut. The jig provides all the templates and guides for completing the frame inside. The jig has pre-drilled guide holes for the hole locations located on the side plates, and the recessed areas atop each plate indicate where to trim excess material for the slide rails. Inside, a guide shows how to shape the barrel seat. Instructions will indicate whether a builder must use a Dremel tool or cutting wheel. Jigs can also be reusable but are dependent on the material (i.e., metal or polymer). Metal jigs are considered reusable and can fabricate multiple 80% lowers and frames. Polymer jigs are considered disposable, but they can be reused if the builder is careful not to damage the jig while using it for completing a frame or lower.

4

10.     In total, WASHINGTON received and/or had order forms from online firearm retailers for approximately sixteen (16) AR-15 5.56/.223 and/or 300 Blackout build kits, twenty-one (21) AR-15 lower receivers, two (2) PMF Glock style pistol build kits and frames, in approximately a nine (9) month period. Your affiant knows, based on training and experience, that a build kit will only allow an individual to manufacture one (1) firearm and would require purchasing a frame or lower receiver to complete the build. Your affiant believes, based solely on the observed packing slips/invoices detailed above, that WASHINGTON could have manufactured/built approximately twenty-three (23) completed PMFs. It is important to note, only five (5) PMFs were recovered from WASHINGTON's residence during the execution of the state search warrant on October 4, 2023.

11.     In WASHINGTON's residence, agents located (1) an invoice from EP Armory, dated 07/19/2023, addressed to WASHINGTON, order #BTX126641, billing address; Dwaine Washington, 4945 N 42nd St, Milwaukee, WI 53209, 414-379-5631 (TARGET CELL PHONE), dkwash36@gmail.com for one (1) Buy 3 get 1 free on EP80-2's with an order comment "I'd like to receive one in the sand color"; and (2) an invoice from EP Armory dated 08/08/2023, order #BTX126753, billing address; Dwaine Washington, 4945 N 42nd St, Milwaukee, WI 53209, 414-379-5631 (TARGET CELL PHONE), dkwash36@gmail.com for one (1) Buy 3 get 1 free on EP80-2's with an order comment stating "I'd like to receive one in the sand color." WASHINGTON later told your affiant that his phone number is 414-379-5631 (TARGET CELL PHONE) and his email address is dkwash36@gmail.com.

12.     Also, in WASHINGTON's residence, agents located an invoice from EP Armory, a Texas based online firearm retailer. The invoice showed eight (8) AR style unfinished firearm

5

lowers were shipped to "Kevin Henry" at 4308 N. 66th Street, Milwaukee, WI 53216, 414-484-5019, and mybmw326@gmail.com.

**Dwaine Washington's Inculpatory Statements**

13.     In a statement to law enforcement on October 4, 2023, WASHINGTON admitted to receiving eight (8) EP Armory lowers, referring to unfinished 80% lowers. WASHINGTON stated that he received (8) AR style unfinished firearm lowers from a person who he declined to identify. WASHINGTON said he manufactured the AR style unfinished firearm lowers into full privately made firearms (PMFs) and provided four (4) completed PMFs to the person who supplied the eight (8) AR style unfinished firearm lowers. WASHINGTON said that he kept four (4) of the PMFs that he made from these unfinished lowers for himself. Those four firearms were recovered in his residence.

14.     The following is a summary of the interview of WASHINGTON and not intended to be a verbatim account unless as indicated below through the use of direct quotes.

     a.    WASHINGTON stated he has worked at Purple Mountain Solutions for approximately two (2) years and just started making approximately $16.50 an hour.

     b.    WASHINGTON stated he has been making PMFs for approximately three (3) years and during that time, he believes he has manufactured/built approximately twenty-five (25) PMFs. WASHINGTON stated the building/manufacturing of PMF's is relaxing to him and he enjoys doing it as a hobby. WASHINGTON stated he builds AR pistols, but has also built several conventional pistol style PMFs, referring to a Glock-style PMF. WASHINGTON stated he has built PMFs for himself, as well as other individuals.  WASHINGTON also stated that he has

6

worked on other individuals' firearms (firearms that WASHINGTON did not build), in a gunsmithing role. WASHINGTON identified the individuals he builds and gunsmiths for as being family, friends, and friends of friends. WASHINGTON stated he believed these individuals to be responsible and on the up and up, referring to being able to legally possess firearms, but did state he has dealt with individual(s) who may have been a felon, but WASHINGTON was not certain of that being a fact.

c. WASHINGTON stated when he does builds for other individuals there are times where WASHINGTON orders the parts from online firearm retailers on their behalf, has them shipped directly to his residence and builds the PMFs for them. Other times, people will order the parts themselves, have the parts shipped to their own residence, and then bring the parts over for WASHINGTON to build for them.

d. WASHINGTON stated he has bartered PMF builds for other individuals as well as PMFs he has built for himself for items/services he needed and did not have the money to purchase. WASHINGTON admitted that he had lied and had built one (1) or two (2) PMFs for approximately $100.00 to $200.00 USC. WASHINGTON explained that he knew he would definitely be in trouble if he admitted to building PMFs in exchange for money. Your affiant took this statement to mean WASHINGTON knew manufacturing firearms for money was illegal. WASHINGTON did state there were occasions where he built PMFs for individuals for no exchange of money, goods, or services. Towards the end of the interview, WASHINGTON clarified that the PMF parts he had purchased and

7

built for himself were not purchased or built with the intent to sell, barter, or trade them. WASHINGTON also indicated he has not really been able to keep any of his personal firearms due to circumstances arising where he needed to trade/barter them for parts or services.

e.   WASHINGTON stated he has built approximately ten (10) AR15 pistol-style PMFs and brought them down to Crenshaw, Mississippi where his uncle, Leon PUE, resides. WASHINGTON stated he brought these ten (10) PMFs down there over time and the last time he was down there was approximately a year ago. WASHINGTON stated these ten (10) PMFs were still all at his uncle's residence. WASHINGTON stated he used these PMF's to hunt deer with on his uncle's property. WASHINGTON also stated these ten (10) PMFs do not have sights on them and when he is ordering the parts to build a PMF, he never orders sights for them. When affiant asked how he was able to hunt with a firearm with no sights, WASHINGTON stated he was a good shot. When asked why he left these PMFs in Mississippi, WASHINGTON stated they were left down there because there was less of a risk of them being stolen out of his uncle's rural residence than they would be at WASHINGTON'S residence.

f.   WASHINGTON was asked about the four (4) AR15 pistol PMFs which were recovered on top of the dog kennel and living room of WASHINGTON'S residence during the search warrant operation on October 4, 2023. WASHINGTON stated he built those four (4) PMFs the previous night and they were for his collection. WASHINGTON stated he gave money to an individual, who he was unwilling to identify, and together they purchased a total of eight (8)

8

unfinished lowers from EP Armory. WASHINGTON stated four (4) lowers were for WASHINGTON and the other four (4) were for the unidentified individual. The unidentified individual placed the order, had them shipped to their residence, and then brought them over to WASHINGTON to build. WASHINGTON stated he believed the lowers were delivered last Thursday (referring to September 28, 2023). WASHINGTON stated the four (4) PMFs he built for the unidentified individual were picked up by the unidentified individual that morning.

15.    Affiant also asked WASHINGTON for consent to search his cellular telephone, which WASHINGTON denied. Your affiant did inquire with WASHINGTON what type of cellular telephone WASHINGTON owned and WASHINGTON stated it was an Android. For most of the interview WASHINGTON did have his cellular device concealed on his person but did take the cellular telephone out during the interview allowing your affiant to observe the device and your affiant believes based on training and experience that WASHINGTON'S cellular telephone was in fact an Android device and not an Apple iPhone. Your affiant observed WASHINGTON'S cellular telephone to be a touchscreen device in a dark colored phone case. Furthermore, WASHINGTON provided his telephone number as being 414-379-5631 (TARGET CELL PHONE) to your affiant.

**Evidence Connecting Kelvin Henry to: (1) the Four Privately Made Firearms; (2) Target Residence 1; (3) Target Residence 2; and (4) the Target Vehicle**

16.    Within the same basement area where jigs and other associated items were observed inside WASHINGTON's residence, officers located an open USPS box with shipping label torn off from "Happy Bear" and a billing invoice from EP Armory dated 09/23/2023, order #BTX126966, showed a delivery going to "Kevin Henry" at 4308 N 66th Street, Milwaukee, WI

53216 for eight (8) black EP80-2 (AR-15 Lowers), telephone number 414-484-5019, and email address mybmw326@gmail.com.

17.     Your affiant found that the information on this document is consistent with WASHINGTON's admission that he provided four (4) completed PMFs to the person who ordered eight (8) lowers from EP Armory that WASHINGTON believed were received on approximately September 28, 2023.

18.     Your affiant was able to identify "Kevin Henry" as Kelvin HENRY ("HENRY"), DOB: 6/6/1979, who is a convicted felon. Your affiant conducted a criminal history query, through the National Crime Information Center ("NCIC"), for HENRY which resulted in identifying the following felony convictions:

     a.  A June 5, 2002, Milwaukee County Circuit Court Case Number 2001CF006492 felony conviction for Manufacture/Deliver Cocaine.

     b.  A November 24, 2004, Milwaukee County Circuit Court Case number 2004CF002000 felony conviction for Armed Robbery and Reckless Injury 1st Degree.

19.     Your affiant is aware, through a separate recent MPD criminal investigation, that "Kevin Henry" is an alias utilized by HENRY. Affiant also learned HENRY is currently on extended supervision for 1st Degree Reckless Injury and Armed Robbery with Use of Force.

20.     ATF TFO Paul Martinez contacted the Wisconsin Department of Community Corrections ("WI DOCC") and learned the following regarding HENRY'S extended supervision with WI DOCC: HENRY'S current WI DOCC address is 2628 N. 48th Street, Milwaukee, WI 53210. WI DOCC stated HENRY moved to 2628 N. 48th Street in August of 2023 and has had only one (1) home visit at this address which occurred on September 11, 2023. HENRY also has

10

telephone number 414-484-5019 listed as his telephone number with WI DOCC. This is the same telephone number used on the EP Armory invoice, causing your affiant to further believe that HENRY is the person to whom WASHINGTON provided the completed four (4) PMFs on the morning of the search warrant.

21.     Additionally, on HENRY'S list of contacts registered with the WI DOCC, HENRY lists the address of 4308 N. 66th Street, Milwaukee, WI 53216 as being the residence of his cousin, Anthony GLENN (hereinafter "A. GLENN"), and aunt, Michelle GLENN (hereinafter "M. GLENN"). This is the address listed on the EP Armory invoice where HENRY had the eight (8) EP Armory unfinished lowers shipped. Your affiant conducted a criminal history check for A. GLENN and M. GLENN, through NCIC, and learned neither are prohibited from possessing firearms and/or ammunition. It is important to note, through a query of a law enforcement database that your affiant has used in the past and found to be reliable, that there was also an Anthony GLENN SR (hereinafter "A. GLENN SR") associated to 4308 N. 66th Street, Milwaukee, WI. A review of A. GLENN SR'S criminal history revealed a felony conviction for Aggravated Battery/Intent-Bodily Harm on or about July 19, 1993, in Milwaukee County Circuit Court, Case Number F-923059.

22.     Your affiant queried HENRY through the Wisconsin Circuit Court Access Page (CCAP) and learned HENRY has an open misdemeanor case in Milwaukee County for Battery Domestic Violence, case # 2023CM002110. In the "Court Record" notes, for the above-listed Milwaukee County Circuit Court case, as of August 8, 2023, HENRY lists his current residence as 4308 N. 66th Street, Milwaukee, WI 53216. Affiant also learned that HENRY had a pre-trial conference regarding this case scheduled for October 9, 2023, at 0830hrs. According to CCAP records, at no time between August 8, 2023, and October 9, 2023, did HENRY update or change

11

his address with the court.  Therefore, on the date when the eight (8) lowers were ordered from EP Armory and shipped to 4308 N. 66th Street, Milwaukee, WI. HENRY listed that same address as his address with the court.  This further confirms for your affiant that HENRY is the individual who ordered the eight (8) lowers from EP Armory and, thus, is the same person to whom WASHINGTON furnished the four (4) completed PMFs.

      23.    Your affiant reviewed data provided by EP Armory for the purchase made by "Kevin Henry" from their online firearms retail store. Your affiant observed this was the only order made by "Kevin Henry" from EP Armory. The order was shipped on September 25, 2023, through standard shipping, to 4308 N. 66th Street, Milwaukee, WI and had tracking number 9405 5112 0620 9577 2532 61 associated to the order. Your affiant learned, through the United States Postal Service (hereinafter "USPS"), that a search of the above-listed tracking number through USPS's databases showed the order was delivered on October 2, 2023, at approximately 1102hrs and was "left with individual." Your affiant believes the USPS documenting HENRY'S order as being "left with individual" refers to someone at the 4308 N. 66th Street, Milwaukee, WI being present when the order was delivered and accepted the package from USPS.  Your affiant notes that this is consistent with and corroborates WASHINGTON's admissions regarding his manufacturing and transferring of PMFs.  Specifically, WASHINGTON admitted that he built the four (4) PMFs for the unidentified individual (believed by your affiant to be HENRY) prior to WASHINGTON's October 4, 2023, interview. USPS records show that the eight (8) lowers were, in fact, delivered two days before that interview and, thus, were available for WASHINGTON to use to make completed PMFs that night.

      24.    WASHINGTON'S statement establishes that (1) WASHINGTON provided money to a person he declined to identify for that person to acquire unfinished 80% firearm

12

lowers; (2) that person ordered eight (8) unfinished lowers from EP Armory; (3) that person supplied WASHINGTON with the eight (8) unfinished lowers; (4) WASHINGTON used these unfinished lowers to manufacture eight (8) PMFs; (5) WASHINGTON supplied the person who ordered the unfinished lowers with four (4) of the completed PMFs on the morning of the search warrant (October 4, 2023); and (6) the remaining four (4) PMFs were in WASHINGTON's residence. Your affiant believes WASHINGTON's statement is reliable because it was, in part, made against his penal interest, and because aspects of his statement were corroborated by independent sources. The markings on the lowers on the four (4) completed PMFs found in WASHINGTON's house bear the same markings as those listed for sale on EP Armory's website and are consistent with the model number listed on the recovered EP Armory invoice. The shipping address on the EP Armory invoice is the same address HENRY lists with the Milwaukee County Circuit Court in his open criminal case. It is also an address HENRY provided as a relative's address to the WI DOCC. Further, the phone number listed on the EP Armory invoice is the same number HENRY provided to WI DOCC. Finally, "Kevin Henry" is a known alias for HENRY. In fact, Kevin D. Henry is a listed A.K.A. on CCAP records for HENRY's open Milwaukee County criminal case. Based upon all of this, your affiant believes HENRY is the unidentified individual who ordered the lowers and subsequently acquired the four (4) completed PMFs from WASHINGTON'S residence on the morning of October 4, 2023.

25. Your affiant knows, from training and experience, that individuals like HENRY, who are convicted felons and are unable to obtain firearms through the legal gun market due to their prohibited status, are forced to rely on non-prohibited individuals to procure firearms from the legal gun market or manufacture and/or have others manufacture PMFs on their behalf. Furthermore, your affiant knows, from training and experience, prohibited persons tend to hold

13

onto firearms they can procure for long periods of time due to their inability to obtain firearms through a legal market. Furthermore, unlike narcotics which can be consumed and/or disposed of expeditiously, firearms tend to be kept and utilized for long periods of time. As such, your affiant believes HENRY is still in possession of the four (4) AR pistols WASHINGTON built for HENRY.

26.     As previously documented, your affiant was able to identify HENRY through a separate, recent criminal investigation. Through that investigation, officers were aware HENRY drove a 2014 brown Hyundai Equus sedan bearing Wisconsin license plate number ARC7738.

27.     Your affiant queried the above-listed license plate number through law enforcement databases which revealed HENRY as being the registered owner of the vehicle and has a vehicle registration expiration date of May 31, 2024. Your affiant conducted a query of HENRY'S above-listed license plate number through a law enforcement database which collects, tracks, and stores license plate reader (LPR) hits on vehicles from law enforcement agencies and commercial companies. Your affiant has used this database in the past and found it to be reliable. The query revealed approximately forty-seven (47) LPR hits for HENRY'S vehicle all taken between May 31, 2023 to October 8, 2023. Of those forty-seven (47) LPR hits, approximately eighteen (18) LPR hits occurred between 2616 N. 48th Street, Milwaukee, WI and 2626 N. 48th Street, Milwaukee, WI from August 7, 2023 to October 8, 2023.  Affiant did not locate any LPR hits for HENRY'S vehicle at the 66th Street residence.

28.     In October of 2023, your affiant along with other investigators conducted several rounds of surveillance on the 2600 block of North 48th Street, Milwaukee, WI 53210. During each surveillance operation, investigators observed the 2014 brown Hyundai Equus sedan bearing Wisconsin license plate number ARC7738 approximately parked in front of duplexes

14

located at 2634-2636 and 2628-2630 N. 48th Street, Milwaukee, WI. Specifically, on October 15, 2023, TFO Martinez observed HENRY exit the door of 2628 N. 48th Street, Milwaukee, WI, enter the driver seat of the 2014 brown Hyundai Equus, and drive away.

29.     Investigators conducted a utility check on 2628 N. 48th Street, Milwaukee, WI, which is HENRY'S WI DOCC address and the address investigators observed HENRY exiting on October 15, 2023. The purpose of the query was to see if investigators could further link HENRY to the above-listed address. As a result, investigators learned utilities for 2628 N. 48th Street, Milwaukee, WI have been registered to Precious R. PULLEY (hereinafter "PULLEY") since August 3, 2023. Investigators are aware, from the previous investigation into HENRY, that PULLEY and HENRY have been together for many years and PULLEY was a live-in girlfriend of HENRY.

30.     On or about October 24, 2023, your affiant conducted another query of HENRY'S vehicle (2014 brown Hyundai Equus bearing Wisconsin license plate number ARC7738) through the same law enforcement database which collects, tracks, and stores license plate reader (LPR) hits on vehicles from law enforcement agencies and commercial companies. Since the previous query, which was completed before the surveillance operation occurring on October 9, 2023, your affiant observed seven (7) additional LPR hits occurring between October 10, 2023, to October 24, 2023. Specifically, six (6) of these hits occurred between 2622 N. 48th Street, Milwaukee, WI to 2627 N. 48th Street, Milwaukee, WI between the dates of October 10, 2023, to October 24, 2023. This brings the total amount of LPR hits to approximately fifty-four (54) and the total amount of LPR hits in the 2600 block of N. 48th Street to twenty-four (24).

31.     Based on the fact HENRY'S WI DOCC address is 2628 N. 48th Street, Milwaukee, WI, that HENRY's vehicle has numerous LPR hits in the area of 2628 N. 48th Street,

15

Milwaukee, WI between August 2023 to the present, investigators observing HENRY exit 2628 N. 48th Street, Milwaukee, WI during a surveillance operation, and the utilities for 2628 N. 48th Street, Milwaukee, WI being registered to HENRY'S girlfriend, investigators believe HENRY is currently residing at 2628 N. 48th Street, Milwaukee, WI.

32.     Based on the facts above, the affiant believes that HENRY is having firearms parts shipped to the 4308 N. 66th Street, Milwaukee, WI to avoid detection at his residence located at 2628 N. 48th Street.

33.     The 4308 N. 66th Street, Milwaukee, WI is described as a single-story residence with red brick and white siding and a black asphalt shingled roof. The front entrance door of 4308 N. 66th Street, Milwaukee, WI is located on the Westside of the residence with a raised front patio leading to the front door which has a black metal security door and a brown interior door. The numbers "4308" are located directly to the South of the front door and are on a white placard with black numbers. The property also has a detached garage with white siding and a single-vehicle garage door at the rear of the residence, connected to the rear alleyway, with the garage door entrance facing East.

34.     2628 N. 48th Street, Milwaukee, WI is described as a three-story residential duplex building with beige siding and a black asphalt shingled roof. The front entrance door of 2628 N. 48th Street, Milwaukee, WI is located on the Westside of the residence, is the Southernmost door, and has multiple steps leading to the front door which has a black metal security door and a wood interior door. The attached unit, 2630 N. 48th Street, has a separate front entrance on the Westside of the residence and is the Northern most door. Each individual residential unit has its own entrance door. The numbers "2628" are located on a brick pillar to the South of the front door and are on a white placard with black numbers.

16

35.     On or about October 4, 2023, your affiant made a preservation request through Google LLC's LERS system for WASHINGTON'S account: dkwash36@gmail.com.

36.     On or about October 6, 2023, your affiant made a preservation request through Google LLC's LERS system for HENRY'S account: mybmw326@gmail.com.

37.     On or about November 14, 2023, your affiant queried the TARGET CELL PHONE through a law enforcement database to determine the carrier of the TARGET CELL PHONE. Your affiant has used this database in the past and found it to be reliable. As a result, your affiant observed the TARGET CELL PHONE to be affiliated with AT&T.

38.     On or about November 14, 2023, your affiant queried HENRY'S telephone number, 414-484-5019, through the same law enforcement database to determine the carrier of the telephone number. As a result, your affiant observed HENRY's telephone number to be affiliated with Verizon.

39.     Accordingly, based upon the information contained in this affidavit and based on my training and experience, I believe WASHINGTON utilizes the TARGET CELL PHONE to communicate and document the manufacturing, trafficking, and unlawful possession of PMFs/firearms. As previously stated in this affidavit, your affiant knows, through the review of order forms from online firearm retailer websites, that WASHINGTON utilized the TARGET CELL PHONE when placing orders from online firearm retailers. Additionally, during the non-custodial interview of WASHINGTON, WASHINGTON provided your affiant with TARGET CELL PHONE as being his telephone number. Locating the TARGET CELL PHONE will assist case agents in determining WASHINGTON's location, as well as additional evidence of the alleged criminal activity between HENRY, WASHINGTON, and others known and unknown.  In sum, your affiant believes that there is probable cause to believe that WASHINGTON is utilizing

17

the TARGET CELL PHONE to communicate and as such will contain for evidence, fruits, and instrumentalities of violations of violations of Title 18 United States Code, Sections 922(a)(1)(A) (Engaging in the Business of Importing/Manufacturing/ Dealing in Firearms), 922(d)(Sale or Transfer of a Firearm to a Prohibited Person), 922(g)(1)(Unlawful Possession or Receipt of a Firearm by a Prohibited Person), and Title 18 United States Code, Section 933(Trafficking in Firearms), as further described in Attachment B.

40.     In my training and experience, I have learned that AT&T Mobility ("Service Provider") is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

41.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone

18

numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

42.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

### Pen-Trap Data

19

43.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### Subscriber Information

44.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

20

## AUTHORIZATION REQUEST

45.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

46.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

47.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

48.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not

authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

49.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1. Records and information associated with the cellular device assigned **(414) 379-5631** (referred to herein and in Attachment B as "TARGET CELL PHONE"), with unknown listed subscriber(s) that is in the custody or control of **AT&T and all its Subsidiaries and Affiliates** (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 11760 US Highway 1, North Palm Beach, FL 33408.

2. The Target Cell Phone.

# ATTACHMENT B

## Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period of December 1, 2018 to present:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

24

viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records**[. OR**; and**]**

ix.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b.  Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.  Source and destination telephone numbers;

iii.  Date, time, and duration of communication; and

iv.  All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c.  Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell

25

Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of Title 18, United States Code, Sections 922(a)(1)(A) (Engaging in the Business of Importing/Manufacturing/ Dealing in Firearms); 922(d) (Sale or Transfer of a Firearm to a Prohibited Person); 922(g)(1) (Unlawful Possession or Receipt of a Firearm by a Prohibited Person); and 933 (Trafficking in Firearms) involving **DWAINE WASHINGTON and KELVIN HENRY** during the period **December 1, 2018 to the present**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

26

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS**
**RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by **AT&T**, and my official title is _____. I am a custodian of records for **AT&T**. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of **AT&T**, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.      such records were made by **AT&T** as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____         _____
Date                                          Signature

27

☑ Original  ☐



**CLERK'S OFFICE**
**A TRUE COPY**
Nov 22, 2023
s/ D. Olszewski

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.  23  MJ  223 |
| PING with AT&T (and all its subsidiaries and | ) |
| affiliates) for (414) 379-5631 (See | ) **Matter No.: 2023R00375** |
| Attachments) | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___12/06/2023___ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.  ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Hon. William E. Duffin___.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  ___11/22/2023 at 11:00 a.m.___    *William E. Duffin*
*Judge's signature*

City and state:  ___Milwaukee, WI___    Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1.    Records and information associated with the cellular device assigned **(414) 379-5631** (referred to herein and in Attachment B as "TARGET CELL PHONE"), with unknown listed subscriber(s) that is in the custody or control of **AT&T and all its Subsidiaries and Affiliates** (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 11760 US Highway 1, North Palm Beach, FL 33408.

2.    The Target Cell Phone.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

     a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period of December 1, 2018 to present:

         i. Names (including subscriber names, user names, and screen names);

         ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

         iii. Local and long distance telephone connection records;

         iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

         v. Length of service (including start date) and types of service utilized;

         vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

         vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records**[. OR**; and**]**

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell

25

Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of Title 18, United States Code, Sections 922(a)(1)(A) (Engaging in the Business of Importing/Manufacturing/ Dealing in Firearms); 922(d) (Sale or Transfer of a Firearm to a Prohibited Person); 922(g)(1) (Unlawful Possession or Receipt of a Firearm by a Prohibited Person); and 933 (Trafficking in Firearms) involving **DWAINE WASHINGTON and KELVIN HENRY** during the period **December 1, 2018 to the present**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

26